2014 UT App 80

**STATE of Utah, Plaintiff and Appellee,**

v.

**John L. LEGG Jr., Defendant
and Appellant.**

No. 20120473–CA.

Court of Appeals of Utah.

April 10, 2014.

Joanna E. Landau, for Appellant.

Sean D. Reyes and Jeanne B. Inouye, for Appellee.

Judge GREGORY K. ORME authored this Opinion, in which Judges J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

## Opinion

ORME, Judge:

¶ 1 John L. Legg Jr. appeals the trial court's decision to revoke his probation and impose the original sentence on his convictions for aggravated assault with a deadly weapon, a third degree felony, Utah Code Ann. § 76–5–103 (LexisNexis 2012), and for possession of a dangerous weapon by a restricted person, a third degree felony, *id.* § 76–10–503. Because of concerns we have with the revocation decision, we remand for further consideration by the trial court.

## BACKGROUND

¶ 2 In reviewing a revocation of probation, we recite the facts in the "light most favorable to the trial court's findings." *State v. Jameson*, 800 P.2d 798, 804 (Utah 1990). Here, the trial court's findings were made orally from the bench and were relatively sparse. Thus, our recitation of the facts also includes findings implicitly made by the trial court and matters that are undisputed in the record.

¶ 3 The day he completed the jail term that was a component of his probation, Legg met with his probation officer to go over his probation agreement. Legg was particularly concerned about the requirement in the agreement that he establish a residence of record. He told the probation officer he was homeless and had no savings. The probation officer instructed Legg to check in by telephone every day until he established a residence. Legg claimed that he did not remember any such instruction, but it is undisputed that Legg failed to call on most days. After about a week, however, Legg showed up for a scheduled in-person interview with his probation officer and was arrested for suspected probation violations.

¶ 4 During a search incident to the arrest, Legg's probation officer discovered a very small amount of cocaine—less than one-tenth of a normal dose—in the bottom of a pill bottle where Legg was storing his prescription medicine. A family member gave the pill bottle to Legg so he would have a more convenient method for storing his pills than in the bulky containers provided to him by jail personnel upon his release. He claimed to have never noticed the thirty-four to thirty-six milligrams of white substance in the bottle even though, on a regular basis, he "dumped" the pills out to take them as prescribed and returned the remaining contents to the bottle. A drug test administered at the same time showed that Legg had not been using cocaine. Nevertheless, the State initiated a separate criminal proceeding against Legg for possession of a controlled substance. In the ensuing trial, the jury returned a verdict of not guilty.

¶ 5 During the subsequent evidentiary hearing to consider revoking Legg's probation, which is the subject of this appeal, the trial court heard testimony from the probation officer and from Legg and considered the physical evidence of the cocaine. The trial court found, with our emphasis, that it was "more likely than not that [Legg] would know that there was a substance in there, *whatever it was.*" Legg's attorney pointed

out that, in order to find a violation, the court had to be convinced that Legg had knowledge of the narcotic character of the substance, not just that he had control over it and had knowledge of its presence, "whatever it was." Without identifying any additional evidence, the trial court then immediately revised its finding: "I think at least by a preponderance I'm going to find that Mr. Legg knew that that was a controlled substance in the bottle[.]"

¶ 6 At the conclusion of the hearing, the trial court found that Legg had violated the terms of his probation in three ways: (1) he knowingly possessed a controlled substance; (2) he failed to be cooperative, compliant, and truthful with his probation officer; and (3) he failed to establish a residence of record. In doing so, however, the trial court expressed concerns about revoking probation so quickly and opined that Legg's probation officer "had an awful quick trigger on Mr. Legg in this case."

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Legg argues that the trial court did not properly focus on the requirement that probation violations must be willful and that the evidence was insufficient to support a finding that any violation of the probation agreement was willful. We review a trial court's decision to revoke probation for an abuse of discretion. *State v. Jameson*, 800 P.2d 798, 804 (Utah 1990).

¶ 8 Legg did not preserve this issue for appeal but argues that the trial court was plainly in error in not focusing on the requirement of willfulness. Plain error is established only if: "(i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

¶ 9 Legg also asserts that he had ineffective assistance of counsel. A claim of ineffective assistance of counsel, when raised on appeal for the first time, presents a ques-

tion of law. *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

¶ 10 To revoke probation, the trial court must find a violation of the probation agreement by a preponderance of the evidence. *State v. Peterson*, 869 P.2d 989, 991 (Utah Ct.App.1994). In addition, the trial court must find, also by a preponderance of the evidence, that the violation was willful, *see State v. Maestas*, 2000 UT App 22, ¶ 24, 997 P.2d 314, and not merely the result of circumstances beyond the probationer's control, *see State v. Hodges*, 798 P.2d 270, 277 (Utah Ct.App.1990).

¶ 11 We recognize that a single violation of probation is legally sufficient to support a probation revocation. *See Jameson*, 800 P.2d at 804 ("The decision to grant, modify, or revoke probation is in the discretion of the trial court."). But considering the expressed qualms of the trial court about the revocation decision, it is appropriate to address each finding individually. And because it appears to have been the totality of the three violations found by the trial court that prompted the trial court's decision to revoke notwithstanding its misgivings, it is less than obvious in this case that the trial court would have exercised its discretion the same way if any one of the three violations was not properly established.

### I. Possession of a Controlled Substance

¶ 12 Legg argues that there was insufficient evidence to show that he knowingly possessed a controlled substance. To prove possession of a controlled substance in violation of Utah Code section 58–37–8(2)(a)(i), the State must establish "that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character." *State v. Winters*, 16 Utah 2d 139, 396 P.2d 872, 874 (1964). *Accord State v. Salas*, 820 P.2d 1386, 1388 (Utah Ct.App. 1991).

¶ 13 The record is more than sufficient to show, at least by a preponderance of the evidence, that Legg exercised dominion and control over the substance in his pill bottle

that later proved to be cocaine and that he had knowledge of its physical presence. He had exclusive control over the pill bottle for about a week, and the trial court did not exceed its discretion in inferring that by "dumping" out the pills on a regular basis it was more likely than not that Legg had knowledge of its presence. It is less clear, however, that Legg had knowledge of the substance's narcotic character. This is an essential element of the violation. If Legg had no idea what the substance at the bottom of his pill bottle was, then it cannot be said that he *willfully* violated his probation agreement by possessing a controlled substance. Counsel below was correct in raising a timely concern with the court that it was not enough to find that Legg knew the substance, "whatever it was," was in the pill bottle. Instead, the trial court needed to find that Legg also knew of the narcotic character of the substance in order to conclude that Legg violated the terms of his probation.

¶ 14 The trial court acknowledged this and amended its finding to include that Legg had the requisite knowledge, but it did so without any reference to evidence on which it may have relied or the rationale for its immediately revised reasoning. Legg's argument about the insufficiency of the evidence in this regard is well taken. Most tellingly, at one point in the hearing, Legg's counsel complained that there was no basis for assuming that Legg would be able to identify cocaine residue because "there has never been any evidence that he has a history with cocaine." In response, the State conceded, "We didn't bring that out in any of this." However, before we can properly address the issue of insufficient evidence, we must first determine if the trial court revealed its reasoning and the evidence upon which it relied in a way that satisfies the due process requirements of a probation revocation hearing. *See Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

¶ 15 In *Gagnon,* the United States Supreme Court held that the minimum due process protections applicable to probation revocation proceedings include " 'a written statement by the factfinders as to the evi-

dence relied on and reasons for revoking [probation].' " *Id.* (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and extending *Morrissey*'s parole revocation rule to probation hearings). The Court has explained that the "written statement required by *Gagnon* ... helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black v. Romano,* 471 U.S. 606, 613–14, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). But when a probation revocation hearing is recorded, a written finding is "constitutionally required only if the transcript and record before the judge do not enable a reviewing court to determine the basis of the judge's decision to revoke probation." *Morishita v. Morris,* 702 F.2d 207, 210 (10th Cir.1983). If the "evidence relied on and the reasons for revoking" probation are not revealed, then a remand for a rehearing is appropriate. *State v. Hodges,* 798 P.2d 270, 275 (Utah Ct.App.1990).

¶ 16 In *Hodges,* the record contained some evidence supporting probation revocation, but other evidence—letters from a social worker and a corrections supervisor—was absent from the record on appeal. *Id.* at 273. In its finding, the trial court in *Hodges* did not make it clear how much it had relied on the missing letters and how much it had relied on the other evidence. *Id.* at 274. We remanded because "[t]he record on review [did] not adequately reveal the evidence relied on by the court." *Id.* at 275.

¶ 17 As in *Hodges,* the record and transcript available in this case do not readily reveal the evidence relied on or the reasons for finding that Legg willfully possessed a controlled substance with knowledge of its narcotic character. The trial court originally found only that Legg had control of the substance, "whatever it was," and that, more likely than not, he was aware of its presence. After Legg's counsel objected, the trial court promptly revised its findings to meet the applicable legal requirement, but it failed to give any indication of its basis for doing so.

¶ 18 The State directs us to a confidential competency evaluation ordered by a trial court in a previous matter as evidence of Legg's familiarity with cocaine. During the court-ordered competency evaluation, Legg made potentially incriminating statements to a social worker. The trial court did not reveal if it relied on this evidence or not, although it apparently was among the voluminous materials before the court.

¶ 19 Because we cannot determine from the record what evidence, if any, the trial court relied on in finding that Legg had knowledge of the narcotic character of the substance in his pill bottle, we cannot conclude that Legg willfully violated his probation. We therefore remand to the trial court to identify the evidence it relied on and its reason for moving so quickly from a finding of "whatever it was" to a finding of knowledge that the substance was cocaine. *See Black*, 471 U.S. at 613–14, 105 S.Ct. 2254 (holding that without a finding from the trial court detailing the evidence relied on and the reasons for probation revocation, there will not be "an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence").

## II. Failure To Be Cooperative, Compliant, and Truthful

¶ 20 Legg argues that the evidence is insufficient to show that he willfully failed to be cooperative, compliant, and truthful with his probation officer. The probation officer testified that he instructed Legg to check in by telephone every day until he established a residence. Legg failed to do so. The State produced evidence that Legg could have called every day if he had wanted to do so. While it may have been inconvenient at times, Legg admitted that he did have access to telephones. It is also clear that Legg had the correct telephone number for his probation officer because he called and left two messages on the second day of his probation. The trial court found the probation officer's testimony to be more reliable and ruled that Legg's failure to call was a willful violation of his probation agreement.

■ ¶ 21 Again, the trial court did not explicitly reveal the evidence relied on or its reasoning in reaching this conclusion, *see supra* ¶ 19, but on this issue the evidence and statements contained in the record make the evidentiary basis for this finding sufficiently clear. *See Morishita v. Morris*, 621 P.2d 691, 693 n. 2 (Utah 1980) ("[T]he transcript, in which many statements by the judge appear, reveals the judge's thought process and the conclusions he drew from the evidence. An entry of formal findings of fact and conclusions of law would add nothing[.]"). Concerning the first prong of the plain error test, we do not conclude that the trial court made any error, plain or otherwise, in connection with this ruling. *See State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). The evidence was sufficient to reasonably conclude that Legg knew he was supposed to call, that he had the means to call, and that his failure to consistently do so was willful. *See State v. Brady*, 2013 UT App 102, ¶ 7, 300 P.3d 778 (concluding that findings of willfulness in the probation revocation context can be implicit).

## III. Failure To Establish a Residence

■ ¶ 22 Legg argues that the court plainly erred because the evidence was insufficient to show that he willfully failed to establish a residence of record. Legg argues that the trial court based its finding solely on the undisputed fact that Legg remained homeless after one week of probation. If this was, in fact, the trial court's reasoning, then it may have plainly erred. If an "appellant's failure ... resulted from problems beyond his control, his probation cannot be revoked." *State v. Hodges*, 798 P.2d 270, 277 (Utah Ct.App.1990). On appeal, however, the State argues that the requirement to call every day was an accommodation to Legg that effectively replaced the requirement that he establish a residence of record. This allowed Legg to remain transient so long as he reported his temporary "residence of record" every night.

■ ¶ 23 The trial court, however, did not explain whether it found the violation to be the result of Legg's failure to establish a residence of record or whether it found the violation to be the result of Legg's failure to call in with updated "residence" information every night. It certainly appears that it was

the former, although the trial court cut short any opportunity to flesh out the basis for this claimed violation. The judge stated:

> I think I can find based on the evidence that has been presented today that Mr. Legg did fail to establish a residence of record and that ... he did fail to be cooperative, compliant and truthful with certain dealings.... So I'm going to make a finding without even hearing from you folks on argument ... that those two have been violated.

This finding leaves us without "adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *See Black v. Romano*, 471 U.S. 606, 613–14, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). Accordingly, we remand to the trial court to identify the facts on which it relied in concluding that Legg willfully failed to establish a residence of record.

### IV. Ineffective Assistance of Counsel

¶ 24 Legg argues that he received ineffective assistance of counsel because his trial counsel failed to object to the trial court's revocation of probation without sufficient evidence of the willfulness of Legg's violations. We conclude that trial counsel's failure to object to the finding that Legg violated his probation by failing to be cooperative, compliant, and truthful with his probation officer—i.e., by not calling his probation officer on most days-was not ineffective. As previously discussed, *see supra* ¶ 21, the record and transcript support the trial court's finding on this point, meaning an objection would have been unavailing. "Failure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546. As a result, we conclude that trial counsel was not ineffective in this regard. And because we have already remanded for reconsideration on the remaining issues, it is unnecessary to address the effectiveness of counsel with respect to those issues.

### CONCLUSION

¶ 25 We affirm the finding that Legg willfully violated his probation agreement by failing to be cooperative, compliant, and truthful with his probation officer. But we are not confident that, standing on its own, the single violation that we affirm would have resulted in a revocation of probation. We remand on the issues of possession of a controlled substance and failure to establish a residence of record for further consideration and explanation by the trial court. On remand, the trial court must reassess whether, under all the circumstances, Legg's probation should be revoked.