**2020 UT App 10**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JORDAN KEITH HUTCHINSON,
Appellant.

Opinion
No. 20180413-CA, No. 20180414-CA
No. 20180415-CA, and No. 20180416-CA
Filed January 9, 2020

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 121403421, No. 141401527
No. 151400548, and No. 171400633

Jennifer Foresta, Margaret P. Lindsay, and Douglas J.
Thompson, Attorneys for Appellant

Sean D. Reyes and Thomas Brunker, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

HARRIS, Judge:

¶1     At least since 2012, Jordan Keith Hutchinson has had a drug problem. He pled guilty to his first drug-related offense in 2013, and then spent the next five years on probation, during which time Hutchinson was given the opportunity to participate in drug court and several other addiction treatment programs. None seemed to work, though, and Hutchinson racked up twenty-four probation violations, including the commission of several new drug offenses, even two for distribution. By 2018, the district court had seen enough, and revoked Hutchinson's probation and imposed his original

prison sentences. Hutchinson appeals that decision, asserting that our legislature's adoption of the 2015 Justice Reinvestment Initiative (JRI) changed the probation landscape such that the district court's decision was an abuse of discretion. While we do not disagree that JRI, in some ways, did change the probation landscape, we conclude that the district court, in this particular case, did not abuse its discretion by revoking Hutchinson's probation and sending him to prison, and we therefore affirm.

BACKGROUND[1]

*2012 Charges*

¶2     In December 2012, police and paramedics were called to a residence where they found twenty-four-year-old Hutchinson on the floor, unconscious and barely breathing. Hutchinson had a still-bleeding injection site on his arm; his family reported that he had probably injected heroin. Paramedics transported Hutchinson to a local hospital. Shortly thereafter, Hutchinson snuck out of the hospital, taking approximately $500 worth of hospital property with him. Related to these events, the State charged Hutchinson with possession or use of a controlled substance, a second-degree felony, as well as misdemeanor counts of theft and possession of drug paraphernalia.

¶3     In February 2013, Hutchinson pled guilty to all three charges, and the district court agreed to hold those pleas in abeyance and refer Hutchinson to drug court. But the court

---

1. "In reviewing a revocation of probation, we recite the facts in the light most favorable to the [district] court's findings." *State v. Legg*, 2014 UT App 80, ¶ 2, 324 P.3d 656 (quotation simplified).

ordered Hutchinson "to remain in custody until treatment space becomes available" and to "comply with all the terms and conditions of the Plea in Abeyance Agreement."

¶4     Just five weeks later, Hutchinson voluntarily opted out of drug court. As a result, the district court revoked his plea in abeyance and entered his guilty pleas. The court imposed a prison sentence of one-to-fifteen years on the second-degree felony count, and jail sentences on the misdemeanor counts, but suspended those terms of incarceration and placed Hutchinson on probation, to be supervised by Adult Probation and Parole (AP&P). Per the probation conditions, Hutchinson was ordered to, among other things, "have no further violations during the probation period," "pay fines, fees, restitution, and/or supervision fees," and "successfully complete a substance abuse assessment and all recommended treatment."

¶5     Shortly thereafter, Hutchinson was screened for and accepted into the Drug Offender Reform Act (DORA) program for substance abuse treatment. AP&P described Hutchinson as exhibiting "exemplary performance and attitude toward treatment," and he was deemed to have successfully completed the DORA program in January 2014.

¶6     Just a few months later, however, in May 2014, an AP&P agent was conducting a routine visit at Hutchinson's house, and noticed that "Hutchinson's pupils were very constricted and had the appearance of pin holes." The agent asked Hutchinson "if he had been doing drugs," and Hutchinson admitted "that he had been using every few days for the past week and a half up until [that] morning." Based on this admission, the agent performed a search of Hutchinson's room. The search uncovered twenty-one baggies of black tar heroin, fourteen baggies of crack cocaine, four baggies of cocaine, and four syringes. Hutchinson told the agent that he had obtained the drugs "so he could try and sell them because he was broke."

¶7 Following this incident, the agent filed a probation violation report with the district court. The report alleged that Hutchinson had committed seven separate violations of the terms and conditions of his probation: (1) possession of heroin, (2) possession of cocaine, (3) possession of crack cocaine, (4) possession of drug paraphernalia, (5) use of a controlled substance (heroin), (6) failure to pay supervision fees, and (7) failures to pay fines and fees. The district court held an evidentiary hearing on the matter, during which Hutchinson admitted to five probation violations (1, 2, 5, 6, 7), and the remaining two allegations (3, 4) were dismissed. The court revoked and reinstated Hutchinson's probation, but ordered Hutchinson to serve sixty days in jail as a penalty for his probation violations.

*2014 Charges*

¶8 Based on the "extensive" amount of drugs and Hutchinson "openly admitt[ing] he had them for the sole purpose of distribution," an AP&P supervisor "decided that new charges needed to be filed" against Hutchinson "in addition to the probation violation." Soon thereafter, the State charged Hutchinson with four new offenses, including three first-degree felony counts of possession with intent to distribute heroin, cocaine, and crack cocaine. In July 2014, Hutchinson pled guilty to two counts of possession with intent to distribute (for heroin and cocaine), both reduced to second-degree felonies; the third charge was dismissed. On these new counts, the district court sentenced Hutchinson to terms of one-to-fifteen years in prison, but again suspended those sentences and placed Hutchinson on probation, governed by the same conditions as before.

¶9 About six months later, in 2015, AP&P filed a probation violation report alleging that Hutchinson had again violated his probation, this time in fourteen different ways. Hutchinson eventually admitted to eleven new violations, including the

following: failing to submit to mandatory drug tests, possessing heroin and methamphetamine, theft, driving on a suspended license, and operating a vehicle without insurance. The district court again revoked and reinstated Hutchinson's probation, but this time ordered him to serve 300 days in jail, with credit for time served, as a penalty for his probation violations. The court also ordered that a portion of the jail term could be served at home on an ankle monitor.

*2015 Charges*

¶10 The State filed new charges against Hutchinson related to his 2015 probation violations, including three second-degree felonies for possession or use of controlled substances (heroin, methamphetamine, cocaine), as well as various misdemeanor charges. Hutchinson eventually pled guilty to some of the charges, including two counts of possession or use of a controlled substance, reduced from second-degree to third-degree felonies. The district court dismissed the remaining charges, and sentenced Hutchinson to the statutorily-required prison term but suspended it, and revoked and reinstated his probation with substantially the same terms as before.

¶11 A little over a year later, in 2016, AP&P filed a third probation violation report, alleging that Hutchinson had committed five new violations of his probation, including using both heroin and methamphetamine, and failing to submit to mandatory drug testing or pay his court ordered fines and supervision fees. At a subsequent hearing, Hutchinson admitted to all five probation violations, and the district court again revoked and reinstated Hutchinson's probation, but this time it also ordered Hutchinson to participate in further substance abuse treatment. Specifically, Hutchinson was directed to "re-enter treatment at [AP&P's] Treatment and Resource Center (TRC) and complete any recommended treatment as directed after release." As a penalty, the court

ordered Hutchinson to serve 180 days in jail, but offered to cut that jail sentence in half if Hutchinson completed a 90-day substance dependency treatment program, known as the OUT program, at the jail.

### *2017 Charges*

¶12    Although apparently no new charges were filed against Hutchinson related to the 2016 probation violations, he was charged with additional crimes for actions that occurred in February 2017 when police observed him throw a baggie on the ground that was later determined to contain methamphetamine. When officers asked him about the baggie, Hutchinson was uncooperative and argumentative, and eventually fled on foot. Police were later able to locate Hutchinson after discovering his ID card in a backpack that he had abandoned in his attempt to escape. Hutchinson later voluntarily admitted that he was the one who fled on foot.

¶13    As a result of this event, Hutchinson was charged with possession or use of a controlled substance, a second-degree felony, and failure to stop at the command of law enforcement, a misdemeanor. He eventually pled guilty to the possession charge, and the State agreed to dismiss the second count. The court sentenced Hutchinson to the statutorily-required prison term, but again suspended it and revoked and reinstated his probation with effectively the same terms as before.

### *Latest Probation Violations*

¶14    In April 2018, Hutchinson arrived at an AP&P field office for his monthly scheduled visit. Hutchinson's parole agent observed that Hutchinson "was under the influence of drugs due to his accelerated and involuntary body movement." After questioning, Hutchinson admitted to recently using both heroin and methamphetamine, and he was unable to produce a sample

for a drug test. Hutchinson was arrested for probation violations and booked into jail.

¶15    Shortly thereafter, AP&P filed probation violation reports in all four cases, alleging a total of eight violations. At a hearing convened to address the matter, Hutchinson admitted to three of the allegations: committing retail theft and having used heroin and methamphetamine. The three allegations relating to Hutchinson's failure to pay his fines and fees were stricken, and Hutchinson denied the remaining two allegations (concerning his alleged failure to maintain full-time employment or education, and concerning his alleged failure to be cooperative, compliant, and truthful with AP&P); the district court never made findings on them.

¶16    At the close of the hearing, the court announced its ruling, first noting that it had considered "the background and the facts" of Hutchinson's "previous supervision," the "severity of some of [Hutchinson's] crimes," and that the precipitating incident at the AP&P office involved Hutchinson using "a large amount" of "two separate substances" "immediately before seeing AP&P." The court also noted that Hutchinson had "been on probation for five years," and told Hutchinson that "we have spent five years' worth of services on you, and you've done nothing but try to get out of responsibility." For these reasons, the court concluded that "probation is no longer a suitable option," revoked Hutchinson's probation in all four cases, and imposed the original prison sentences, all to run concurrently.

ISSUES AND STANDARDS OF REVIEW

¶17    Hutchinson now appeals, and raises two issues for our review. First, he takes issue with the court's decision to revoke his probation and send him to prison. A district court's "decision to grant, modify, or revoke probation" is one that we review for

"abuse of discretion." *State v. Nichols*, 2016 UT App 52, ¶ 2, 370 P.3d 575 (per curiam) (quotation simplified). Accordingly, "we view the evidence of a probation violation in a light most favorable to the [district] court's findings and substitute our own judgment only if the evidence is so deficient as to render the court's action an abuse of discretion." *State v. Maestas*, 2000 UT App 22, ¶ 12, 997 P.2d 314. However, whether a district court correctly followed the statutory framework governing probation decisions presents a question of law that we review for correctness. *See Schleger v. State*, 2018 UT App 84, ¶ 6, 427 P.3d 300 ("Issues of statutory interpretation are questions of law that we review for correctness . . . ." (quotation simplified)).

¶18    Second, Hutchinson contends that the district court failed to make adequate findings regarding each of his specific probation violations. Hutchinson admits this issue was not preserved, but asks us to review it for plain error. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (quotation simplified).[2]

---

2. Hutchinson attempts to raise a third issue, asserting that the district court abused its discretion by not ordering AP&P to correct errors in his probation violation report. But Hutchinson has not preserved this issue for our review (he asked the district court to strike the probation violation report, but never asked the court to correct anything in it if the court declined to strike it), and does not argue for the application of any exception to our preservation requirement. *See Wilson v. Sanders*, 2019 UT App 126, ¶ 30, 447 P.3d 1240 (stating that "[a] party that wishes an appellate court to address an unpreserved issue must argue that an exception to preservation applies," and declining to "discuss the matter further" where appellants did "not argue for the

(continued…)

ANALYSIS

I

¶19 Hutchinson's chief argument on appeal is that the district court erred by revoking his probation and imposing his original prison sentences. Hutchinson's argument has a general theme—that prison is too harsh a sanction for addiction-related offenses—but has two particular parts. First, Hutchinson makes a legal argument, asserting that the district court erroneously applied the statutory scheme, amended in 2015 by JRI, that governs probation situations. Second, Hutchinson makes a factual argument, asserting that the district court abused its discretion in this case by revoking his probation and imposing his original prison sentences. We address each argument in turn.

A

¶20 In 2014, concerned about Utah's growing prison population and falling success rates for offenders placed on probation, members of the Utah legislative branch called for a review of the state's criminal justice system. *Justice Reinvestment Report*, Utah Comm'n on Criminal and Juvenile Justice 3 (2014), http://dsamh.utah.gov/pdf/Justice_Reinvestment_Report_2014.pdf [https://perma.cc/BXD2-XFJK]. In response, the Utah Commission on Criminal and Juvenile Justice (CCJJ) began an intensive seven-month review process, including a comprehensive examination of sentencing and corrections data across the state, with the aim of developing policy

---

(…continued)
applicability of any particular exception to our preservation rules" (quotation simplified)). Accordingly, we do not consider this argument further.

recommendations targeted at reducing both recidivism and costs associated with incarceration. *Id.* CCJJ's recommendations were compiled in a report, and included, among other things, findings that Utah had experienced a large increase in offenders sentenced to prison for nonviolent crimes, including drug offenses, as well as an increase in the number of probation revocations. *Id.* Based on these findings, CCJJ recommended certain changes to sentencing and correction practices in Utah. Of relevance in this case, CCJJ recommended a number of changes to the manner in which defendants are sentenced for drug offenses, such as updating the sentencing guidelines, particularly for low risk offenders, and establishing graduated sanctions for probation violations. *Id.* at 14–18. The recommendations also envisioned a proposed expansion of treatment services for substance abuse and improved support programs for recovery and reentry. *Id.* at 19. Partly in response to CCJJ's report, in 2015 the Utah Legislature passed a comprehensive criminal justice reform bill, JRI, which incorporated many of CCJJ's recommendations, including the addition of requirements that, in at least some instances, mandated application of graduated sanctions for probationers who violated the conditions of their probation. *See, e.g.*, Utah Code Ann. § 64-13-21(2) (LexisNexis Supp. 2019) (stating that the department of corrections, including AP&P, "shall apply graduated sanctions established by the Utah Sentencing Commission to facilitate a prompt and appropriate response to an individual's violation of the terms of probation or parole").

¶21 An aspect of JRI that is relevant here is its treatment of one of the subsections of Utah's probation statute. *See* Utah Code Ann. § 77-18-1(12) (LexisNexis 2014). Prior to the amendment, subsection (12) of that statute stated that "[p]robation may not be modified or extended except . . . upon a hearing and a finding in court that the probationer has violated the conditions of probation," *id.* § 77-18-1(12)(a)(i) (2014), and specifically allowed

a judge, "[a]fter the hearing" and after "finding that the defendant violated the conditions of probation," to entirely revoke a violator's probation, *id.* § 77-18-1(12)(e)(ii) (stating that the court may "order the probation revoked, modified, continued, or that the entire probation term commence anew"); *see also id.* § 77-18-1(12)(a)(ii) ("Probation may not be revoked except upon a hearing in court and a finding that the conditions of probation have been violated.").

¶22    Significantly, the JRI amendments to the probation statute preserved a district court's authority to completely revoke probation in appropriate cases, even without applying the new graduated sanctions. In the post-JRI version of the statute, the language of subsection (12)(a)(ii) remains unchanged, stating as before that "[p]robation may not be revoked except upon a hearing in court and a finding that the conditions of probation have been violated." *Id.* § 77-18-1(12)(a)(ii) (2017).[3] And although the legislature added several new provisions to subsection (12)(e), including one discussing the new graduated sanctions, the statute still authorizes courts to "order the probation revoked," *see id.* § 77-18-1(12)(e)(ii) (Supp. 2019), and commands courts to apply the new graduated probation sanctions only if "a period of incarceration is imposed for a violation" of probation, but specifically not in cases where "the judge determines that . . . the sentence previously imposed shall be executed," *see id.* § 77-18-1(12)(e)(iv).

¶23    Moreover, the new sentencing guidelines adopted by the Utah Sentencing Commission reflect that, even post-JRI, district judges retain the flexibility to revoke probation in

---

3. In 2018, this statutory subsection was redesignated as subsection (12)(a)(iii), but the relevant language remains unchanged in the current statute. *See* Utah Code Ann. § 77-18-1(12)(a)(iii) (LexisNexis Supp. 2019).

appropriate cases even without first applying the new graduated sanctions. Those guidelines specifically state that a goal of the JRI modifications was to decrease the disparity involved in the sentencing process, while still "retain[ing] the flexibility to deal with individual cases." *Adult Sentencing & Release Guidelines*, Utah Sentencing Comm'n 4–5 (2017) https://justice.utah.gov/Sentencing/Guidelines/Adult/2017%20Adult%20Sentencing%20and%20Release%20Guidelines.pdf [https://perma.cc/ALZ5-ULV6]. To this end, the guidelines include six "Tools" designed to be used "to determine an appropriate response to both accomplishments and violations while on supervision." *Id.* at 33. One of those tools (Tool 6, entitled "Exceptions to Incarceration Caps") notes that the post-JRI statute does not require application of the graduated sanctions in cases where the court makes a "[f]inding that execution of [the] sentence previously imposed is warranted." *Id.* at 42 (citing Utah Code Ann. § 77-18-1(12)(e)(iii)(B)).

¶24 Hutchinson asserts that the court erred by revoking his probation before implementing the graduated sanctions referred to in the JRI amendments. *See* Utah Code Ann. § 64-13-21(2) (LexisNexis Supp. 2019). But under the post-JRI statutory scheme, a court—as opposed to, say, AP&P, *see id.*—is required to implement the graduated sanctions only if two conditions are met: (a) the court elects to impose "a period of incarceration . . . for a [probation] violation," and (b) the court determines *not* to revoke probation (and thereby impose the original sentence), *see id.* § 77-18-1(e)(iv). Neither condition is met here.

¶25 First, in this instance, the court did not impose a "period of incarceration" "for a probation violation." *See id*. § 77-18-1(12)(e)(iv). On previous occasions, in 2014, 2015, and 2016, the court—while revoking and reinstating Hutchinson's probation—did impose a jail term upon Hutchinson as a penalty for Hutchinson's various probation violations. But this time, the court did not impose any "period of incarceration" upon

Hutchinson specifically as a penalty for his probation violations. Instead, the court revoked Hutchinson's probation entirely, and imposed the original jail/prison sentences that had been suspended pending the outcome of his probation—something that the post-JRI statute continues to allow district court judges to do, in appropriate cases, even without implementing graduated sanctions. And the court's decision in this case to revoke probation directly negated the second condition. Because neither of the foundational conditions were met here, the court was not obligated to implement graduated sanctions.

¶26 Accordingly, we discern no error in the district court's interpretation and application of the post-JRI probation statute. Even after JRI, district courts continue to possess statutory authority, in appropriate cases, to revoke a probationer's probation and impose the original sentences.

B

¶27 Hutchinson next argues that, even if the district court correctly interpreted the statute, it abused the discretion afforded to it under that statute by revoking Hutchinson's probation under the circumstances presented here. On this point, Hutchinson asserts that "no reasonable person" would impose a sanction as harsh as prison for "minor" probation violations that have their roots in drug addiction problems, and concludes that the district court abused its discretion by doing so in this case.

¶28 "The decision to grant, modify, or revoke probation is in the discretion of the [district] court." *State v. Robinson*, 2014 UT App 114, ¶ 7, 327 P.3d 589 (quotation simplified). However, although "the district court is afforded wide latitude in sentencing," this discretion is not limitless, and an appellate court may reverse a sentencing decision upon a finding that the district court abused its discretion. *State v. Moreau*, 2011 UT App 109, ¶ 6, 255 P.3d 689 (quotation simplified). An abuse of

discretion occurs if "no reasonable person would take the view adopted by the [district] court" or "if the sentence is clearly excessive, inherently unfair, or exceeds statutory or constitutional limits." *Id.* (quotation simplified). In this context, Utah courts have recognized "that a single violation of probation is legally sufficient to support a probation revocation." *State v. Legg*, 2014 UT App 80, ¶ 11, 324 P.3d 656.

¶29 Here, the court did not revoke Hutchinson's probation for a single probation violation, or for "minor" probation violations. Over the years, Hutchinson had committed a total of twenty-four probation violations, including three fresh ones, some of which were anything but minor; while on probation, Hutchinson had committed at least nine new offenses, including felony offenses for drug distribution. As the court pointed out in making its ruling, it had reinstated Hutchinson's probation for all of his previous violations, even though some of the earlier violations were quite serious, and had directed Hutchinson to at least three different drug treatment programs over the years. The court noted that it had given Hutchinson every chance to address his drug addiction problems, noting that "we have spent five years' worth of services" on Hutchinson and lamenting the fact that Hutchinson had not taken advantage of the opportunities. The court noted that, in making its final decision, it had considered (among other things) "the background and the facts" of Hutchinson's "previous supervision" and the "severity of some of [Hutchinson's] crimes." *See State v. Rogers*, 2017 UT App 156, ¶ 7, 405 P.3d 801 (per curiam) (recognizing that the district court can review the defendant's entire probation history when deciding to revoke probation).

¶30 Under these circumstances, we cannot conclude that the court exceeded its discretion by revoking Hutchinson's probation. *See Moreau*, 2011 UT App 109, ¶ 10 (finding that the district court did not abuse its discretion when it revoked a

defendant's probation after concluding "that the current rehabilitative measures were not working" because the defendant had "tallied seventeen violations over his two years in drug court" and "accumulated several new felonies").

II

¶31 Finally, Hutchinson argues that the district court plainly erred "by not making specific findings as to which allegations and evidence served as the basis for the court's decision to revoke Hutchinson's probation." Although he acknowledges that a single violation is sufficient to support a revocation, *see State v. Legg*, 2014 UT App 80, ¶ 11, 324 P.3d 656, Hutchinson contends that the record needs to be clear as to the specific violation(s) upon which the court was relying to support its decision, especially here, where the court's decision was based on his performance on probation in its totality. Because this argument was not preserved below, Hutchinson asks us to review it for plain error. To demonstrate plain error, Hutchinson must establish not only that the district court erred, but must also demonstrate that the error was so obvious and fundamental that the court should have stepped in on its own, without being asked to do so. *See State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276. In addition, he must demonstrate that the error was harmful to him. *Id.* If Hutchinson fails to show all of these elements, "plain error is not established." *Id.* (quotation simplified).

¶32 Hutchinson's argument in this regard has two parts. First, Hutchinson assigns error to the district court for failing to make findings with regard to two of the eight allegations of probation violation—regarding Hutchinson's alleged failure to maintain full-time employment and his alleged failure to be cooperative, compliant, and truthful with AP&P—that AP&P leveled against Hutchinson in 2018. But even assuming, without

deciding, that the district court committed error by failing to make findings on these two allegations, any such error was harmless here, where Hutchinson admitted to three other (arguably more significant) violations that same day, and had already committed twenty-one other probation violations in the past. Where a defendant admits to some (but not all) of the probation violation allegations against him, a district court may choose to act solely on the admitted violations. These violations—unlike the only established violation in *Legg*, 2014 UT App 80, ¶ 25—were serious enough to support revocation of probation on their own, even without consideration of the two unadjudicated allegations. And in this case, there were twenty-one other previous adjudicated violations to consider. Under the circumstances, Hutchinson has not demonstrated that the court's failure to make findings on an additional two allegations harmed him.

¶33 Second, Hutchinson faults the district court for not being more specific as to which of the twenty-four (three current, twenty-one historic) probation violations caused it to reach its decision to revoke probation. On this point, there is simply no error. When a district court has before it this many probation violations upon which to ground a decision, we do not believe a court need be more specific. Indeed, it is entirely appropriate for a district court to rest its decision on the totality of the probationer's supervision history, including the three current as well as the twenty-one historic violations of the terms and conditions of probation. Moreover, in this case, the district court did make special mention of the two previous violations that involved new felony offenses for drug distribution, noting that these two violations were particularly significant in its analysis.

¶34 In sum, Hutchinson has not carried his burden of demonstrating that the district court committed plain error in the manner in which it articulated its ruling.

CONCLUSION

¶35    Hutchinson has not demonstrated that the district court erred in its interpretation and application of the post-JRI statutes regarding revocation of probation. Hutchinson has not persuaded us that the district court abused its discretion in revoking Hutchinson's probation, given the circumstances of this case. And Hutchinson has not demonstrated that the court plainly erred by not making more specific findings regarding the violations for which it revoked his probation. Accordingly, we affirm the district court's decision to revoke Hutchinson's probation and impose the original sentences.

───────────