IN THE UTAH COURT OF APPEALS

----ooOoo----

| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100734-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (April 19, 2012) |
| Jamis M. Johnson, | ) | |
| | ) | 2012 UT App 118 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Fillmore Department, 051700056
The Honorable Donald J. Eyre Jr.

Attorneys:     Tate W. Bennett, Fillmore, for Appellant
               Mark L. Shurtleff and Erin Riley, Salt Lake City, for Appellee

-----

Before Judges Orme, Davis, and Roth.

DAVIS, Judge:

¶1     Jamis M. Johnson appeals the trial court's order revoking and reinstating the terms of his probation. *See generally* Utah Code Ann. § 77-18-1 (Supp. 2011). We affirm.

¶2     "The decision to grant, modify, or revoke probation is in the discretion of the trial court." *State v. Jameson*, 800 P.2d 798, 804 (Utah 1990). "[A] trial court's finding of a probation violation is a factual one and therefore must be given deference on appeal unless the finding is clearly erroneous." *State v. Peterson*, 869 P.2d 989, 991 (Utah Ct. App. 1994); *see also State v. Maestas*, 2000 UT App 22, ¶ 12, 997 P.2d 314 ("The trial court's determinations underlying its conclusion that defendant violated his probation are findings of fact we will not disturb unless clearly erroneous, i.e., against the clear

weight of the evidence."). In challenging the trial court's decision to revoke and reinstate his probation, Johnson "must show that the evidence of a probation violation, viewed in a light most favorable to the trial court's findings, is so deficient that the trial court abused its discretion in revoking [his] probation." *See Jameson*, 800 P.2d at 804 (footnote omitted).

¶3 Johnson was required to maintain verifiable full-time employment as a condition of his probation for a March 2007 conviction of securities fraud. In an October 2008 Order of Clarification, the trial court approved Johnson's employment as a part-time legal assistant with attorney Joseph R. Goodman as being in compliance with the terms of his probation. The court based its determination primarily on an affidavit from Goodman (the verification affidavit), which described Johnson as "a 1099 employee" that is paid "on a contract basis" at a rate of "$15 per hour" for "approximately 20-30 hours per week." In the Order of Clarification, the trial court also noted that "Goodman (or any other attorney for whom Mr. Johnson finds employment) shall verify Mr. Johnson's work as [Adult Probation and Parole (AP&P)] periodically inquires." Dissatisfied with the employment verification Johnson provided, AP&P filed several probation progress/verification reports, one of which resulted in an order to show cause hearing held on August 30, 2010 (the August 2010 hearing). During the August 2010 hearing, the trial court determined that Johnson was "in violation of the terms of his probation" for failing "to provide verifi[cation of] full-time employment." This determination was based on the testimony of three witnesses—an agent from AP&P (the agent), a volunteer with the Utah State Bar's Unauthorized Practice of Law Committee (the volunteer), and Johnson himself.

¶4 The agent testified that he repeatedly requested that Johnson provide documentation to verify his employment status and that Johnson was consistently unable to provide the agent with a paycheck stub, a 1099 tax form, an employment contract, or any other similar documentation. The agent testified that he "even brainstormed with Mr. Johnson on thing[s] that [Johnson] could provide" to help AP&P verify his employment, but ultimately "Johnson felt that the only way to verify employment for him was by an affidavit." Additionally, the agent testified that Johnson had fallen behind on his restitution payments, also a violation of the terms of his probation, which prompted the agent to send "a request to the court for a writ of garnishment, and [that,] as part of that writ of garnishment[,] . . . interrogatories . . . were sent to Mr. Goodman." Goodman's answers indicated that he was not "indebted

to" Johnson; that Johnson had no interest in "any property or money" in Goodman's "possession," "charge," or "control"; and that Goodman knew of no debts that might be owed to Johnson or property owned or controlled by Johnson. The agent testified that Goodman's answers to the interrogatories implied that "there was really no nexus . . . between [Goodman] and Mr. Johnson."

¶5     Next, the volunteer testified that in May 2010, he investigated Johnson for the unauthorized practice of law in conjunction with a business called Homeowners Legal Defense. The volunteer discovered that Goodman was listed as the agent for Homeowners Legal Defense. The volunteer contacted Goodman to ask if he "was aware or familiar with" Johnson; Goodman responded that "he was not involved at all with . . . Johnson . . . , and he only agreed to be the[] agent for this company."

¶6     Johnson then testified, contending that the agent never asked him for a pay stub and explaining that his "2009 tax information [had] not [been] prepared yet," so he could not provide it to the agent to verify his employment. Johnson testified that he "consistently . . . work[s] with" Goodman, that Goodman submitted the verification affidavit in 2008 upon which the court approved Johnson's work arrangement with Goodman as in compliance with the terms of his probation, *see supra* ¶ 3, and that Goodman filed another affidavit with the trial court in May 2010 to verify that "Johnson continue[d] to work with [him] on law matters per the Court's authorization" in its October 2008 Order of Clarification. Johnson further testified that "the cases that [he] worked on [were] contingency cases . . . and [he] didn't have income most of 2008." Noting a disparity between Johnson's testimony that he worked on a contingency basis and Goodman's verification affidavit, which stated that Johnson was paid $15 an hour, the trial court asked Johnson for clarification. Johnson responded,

> Mr. Goodman did not say he was going to hire me full time
> at $15 an hour. What happens is—if someone comes in on a
> case, I am attributed $15 an hour.
> . . .
> [H]e doesn't pay me unless money comes in from clients and
> then hopefully we get more than that if I get bonused as a
> staff member from a contingency, but he doesn't pay me $15
> an hour for work I do automatically. We've got to get
> payment in on his cases, and then I get paid at the rate of $15

> an hour. . . . [I]f we are victorious, I get $15 an hour for
> everything I did on a case plus if he's successful he will
> bonus me more than that amount . . . .

¶7 At the conclusion of the hearing, the trial court determined that Johnson's description of his employment did not constitute "full-time employment," and that the terms of his probation require that he both retain full-time employment and provide verification of that employment. Consequently, the trial court "revoke[d Johnson's] probation" and "reinstate[d] it under the same terms and conditions as previously ordered with the additional provision that [Johnson] serve 60 days in . . . jail."

¶8 We conclude that the trial court's determination was not "clearly erroneous" or "against the clear weight of the evidence," *State v. Maestas*, 2000 UT App 22, ¶ 12, 997 P.2d 314. In this case, the trial court's determination boiled down to a matter of credibility, pitting the testimony of the agent and the volunteer against that of Johnson; such credibility determinations are distinctly within the province of the trial court, *see State v. Pena*, 869 P.2d 932, 936 (Utah 1994) (noting that the trial court is "in the best position to assess the credibility of witnesses"). Here, the agent testified that he repeatedly asked Johnson for documentation to verify his employment and that Johnson insisted that an affidavit from Goodman was the only verification he could provide. Although Goodman submitted a subsequent affidavit verifying Johnson's ongoing employment in May 2010, Goodman's responses to the interrogatories and the volunteer's testimony raise doubts as to whether Johnson remained employed with Goodman and whether one or both of Goodman's affidavits were legitimate. Johnson pointed out during the hearing that the agent could have spoken with Goodman to confirm Johnson's status as his employee; however, the agent's failure to do so does not render the trial court's determination clearly erroneous. Johnson testified that he was not paid in a traditional manner, implying that he did not receive pay stubs or sign an employment contract, and that his tax documents were not yet ready because he was still working on filing them. However, as the trial court aptly observed, Johnson's "problems personally filing his own income tax return" should "not prevent Mr. Goodman from issuing a 1099 to" Johnson that Johnson could then show the agent to verify his employment.

¶9 Johnson also argues that the trial court's revocation and reinstatement of his probation was arbitrary and capricious because Johnson's violation was not willful, nor

did it threaten the safety of society.  We agree that "as a general rule, in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful or, if not willful, must presently threaten the safety of society." *State v. Hodges*, 798 P.2d 270, 277 (Utah Ct. App. 1990).  The court must determine willfulness "by a preponderance of the evidence." *State v. Peterson*, 869 P.2d 989, 991 (Utah Ct. App. 1994).  Assuming, without deciding, that a willfulness determination is necessary here where probation was revoked and reinstated rather than just revoked, *cf. State v. Orr*, 2005 UT 92, ¶ 35, 127 P.3d 1213 ("It is not clear whether the willfulness requirement applies to the mere extension of probation for failure to pay restitution."), "a finding of willfulness 'merely requires a finding that the probationer did not make bona fide efforts to meet the conditions of his probation,'" *Peterson*, 869 P.2d at 991 (emphasis omitted) (quoting *State v. Archuleta*, 812 P.2d 80, 84 (Utah Ct. App. 1991)).  Additionally, "the word 'willful' should not be equated with the word 'intentional.'" *Id.*

¶10    Johnson argues that the trial court could not conclude that he willfully violated a term of his probation because he "was reasonable in his reliance on the November 12, 2008 Order [of Clarification,] which outlined the manner in which [his] employment was to be verified, wherein it stated that 'Attorney Goodman (or any other attorney for whom Mr. Johnson finds employment) shall verify Mr. Johnson's work as AP&P periodically inquires.'"  This argument is unavailing.  Although Johnson was permitted to rely on the November 2008 order as confirmation that the employment arrangement with Goodman, as it was described in Goodman's verification affidavit, satisfied the terms of his probation, the order did not permit Johnson to duck the probation agent's requests that Johnson verify his employment status himself.  Assuming Johnson truly believed that the November 2008 Order of Clarification placed the employment verification responsibility entirely on Goodman, then the agent's repeated requests of Johnson to verify his employment surely should have prompted Johnson to seek clarification from the agent or trial court in light of this otherwise obvious misunderstanding.  There is no evidence that Johnson did any such thing.  Moreover, Johnson failed to present this argument during the August 2010 hearing from which he appeals, lending weight to the inference that Johnson was not confused about his responsibilities under the November 2008 Order of Clarification but that he was simply avoiding the agent's requests.  Such behavior does not demonstrate "bona fide efforts to meet the conditions of his probation." *Peterson*, 869 P.2d at 991 (emphasis omitted).

¶11     Accordingly, the trial court's determination that Johnson violated a term of his probation was not clearly erroneous, and its decision to revoke and reinstate his probation was not an abuse of discretion.  Affirmed.

_____
James Z. Davis, Judge

-----

¶12     WE CONCUR:

_____
Gregory K. Orme, Judge

_____
Stephen L. Roth, Judge