2016 UT App 27

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MITCHALL ADAM MERONK,
Appellant.

Opinion
No. 20140816-CA
Filed February 11, 2016

Third District Court, Salt Lake Department
The Honorable Denise P. Lindberg
No. 101900746

Nathalie S. Skibine and Deborah Kreeck Mendez,
Attorneys for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUSTICE JOHN A. PEARCE authored this Opinion, in which JUDGE
KATE A. TOOMEY and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

PEARCE, Justice:

¶1 Mitchall Adam Meronk appeals from the district court's order revoking his probation and imposing his previously

---

1. Justice John A. Pearce began his work on this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3). Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally id.* R. 11-201(6).

suspended prison sentence for his convictions of two counts of sexual exploitation of a minor, each a second degree felony. We affirm.

BACKGROUND[2]

¶2 In January 2010, the State charged Meronk with ten counts of sexual exploitation of a minor after authorities discovered child pornography on his home computer and on an external hard drive. Meronk pled guilty to two counts. A presentence report indicated that Meronk had been victimized as a child and that he was remorseful for his actions. The report also noted that Meronk suffered from Asperger's syndrome and attention deficit hyperactivity disorder. The district court sentenced Meronk to two concurrent prison terms of one to fifteen years, suspended that sentence, and ordered him to serve 180 days in jail with credit for time already served. The district court also placed him on probation for thirty-six months. The initial conditions of Meronk's probation required him to perform 150 hours of community service within one year, pay a $350 recoupment fee, obtain a psychosexual evaluation, and follow any recommended treatment. Meronk was also required to have no internet access and to comply with Sex Offender Group A conditions, which included no possession of materials depicting human nudity or sex acts. Meronk entered into a probation agreement with Adult Probation and Parole (AP&P) that incorporated these and other provisions.

¶3 In February 2012, AP&P filed a violation report, alleging, among other things, Meronk's failure to be cooperative and

---

2. "In reviewing a revocation of probation, we recite the facts in the light most favorable to the trial court's findings." *State v. Legg*, 2014 UT App 80, ¶ 2, 324 P.3d 656 (citation and internal quotation marks omitted).

truthful with AP&P, his failure to complete his community service hours, and his possession of materials depicting human nudity. The violation report also alleged that Meronk had failed to pay his recoupment and supervision fees. Meronk admitted to the first three allegations. As a result, the district court revoked his probation and reinstated it for a new thirty-six month period. The district court also ordered Meronk to serve sixty days in jail. In May 2012, Meronk entered into a new probation agreement with AP&P that, among other things, required him to complete 150 hours of community service within one year and to continue to have no access to the internet.

¶4 In June 2013, AP&P filed another violation report, alleging that Meronk had yet to complete any of his community service hours or pay any of his recoupment fee. This report resulted in a number of hearings before the district court. At the first hearing, held in July, Meronk admitted the alleged violations but proposed paying the $350 recoupment fee that day. Meronk also offered a plan to complete his community service hours. Meronk told the court that a recent promotion at work would require him to use the internet. Meronk requested that he be allowed to take his laptop computer to work, access the internet while there, and take the laptop home at night, all subject to search by AP&P. The district court continued the hearing, reserving its ruling on Meronk's request in order to, among other things, give AP&P time to coordinate with his employer.

¶5 At a second hearing, held in August, the district court began by observing that Meronk had completed no community service since the last hearing and had not been actively engaged in his sex offender therapy. The district court ordered Meronk to make a "very dramatic improvement" in these areas. Meronk repeated his request to take a computer back and forth between his home and work, which AP&P opposed. The district court ordered that any computer Meronk used at work had to stay there. Meronk's counsel volunteered that AP&P was concerned

about computer parts at Meronk's home. Meronk's counsel assured the district court that Meronk would get rid of them. The district court continued the hearing.

¶6    The next hearing occurred in mid-September. Meronk's therapist had written a letter stating that Meronk's sex offender therapy was progressing, albeit slowly. The district court ordered Meronk to increase his rate of progress. Meronk's counsel reported that, contrary to what Meronk had said at the prior hearing, Meronk's employer had indicated to AP&P that he did not need internet access at work. Counsel for the State also reported that roughly two weeks earlier, AP&P had found computer parts at Meronk's home and that Meronk had told an AP&P officer that the district court had not ordered him to remove them. In addition, Meronk was again behind on the payment of his supervision fees. The district court ordered Meronk not to have a computer outside of his work. The district court elaborated, "You may not have any computer components. Period. You may not parse every single little issue to your benefit. Whatever the strictest reading of the terms of probation, the strictest reading of the Court's orders, that's what you are bound by. You may not interpret it to your benefit." The court set a disposition hearing for the end of September.

¶7    At the disposition hearing, the district court revoked and reinstated Meronk's probation for an additional three-year period. The court also ordered Meronk to spend three weekend days in jail and fifty-seven days in home confinement. The district court emphasized that Meronk should make "steady progress" with his treatment and not return with "more issues about a computer or internet access." In October, Meronk entered into another probation agreement with AP&P, which this time included the express provision that he not have a laptop at home.

¶8 Two months later, in December 2013, AP&P filed a request for a review hearing, alleging that Meronk still had computers and computer parts in his room. The request stated that after the last hearing, Meronk had asked his probation officer whether he needed to comply with the court's oral statement regarding computers because the court docket did not reflect that condition. The officer told Meronk that AP&P could only enforce terms that were part of his probation conditions but that Meronk should "probably follow what the judge told him." When AP&P visited Meronk's home in mid-December, they found several computers and video gaming systems in Meronk's room. When asked why he had the computers in his room, Meronk responded that "he didn't think that [the district court] meant for him not to have the computers." AP&P requested that the district court clarify whether Meronk was allowed to have computers and, if not, to add such a restriction to his probation conditions.

¶9 The district court held a review hearing in January 2014. Meronk's counsel argued that due to his mental condition, Meronk had difficulty understanding any direction that was not presented in literal terms. The district court responded that it had been "pretty darn direct" about the computer restriction and that Meronk had affirmatively indicated that he had understood the court's condition. The district court requested that AP&P file an order to show cause. Several days later, AP&P did so, alleging that Meronk had violated the terms of his probation by possessing a "travelling laptop" in August 2013; by possessing computers and computer components in December 2013; and, as of January 2014, by failing to be truthful with AP&P about the computers and failing to show steady and verifiable progress in sex offender therapy.

¶10 The district court conducted an evidentiary hearing in May 2014, at which an AP&P agent testified that AP&P had found Meronk in possession of a laptop and computer parts in August 2013. The agent also described the computers and parts

he found in Meronk's home in December 2013. The agent testified that Meronk had represented that he needed internet access at work, which his employer had subsequently denied, and described Meronk's statement that the district court "had not really ordered him not to have [the computer] components." Finally, the agent testified about Meronk's failure to progress in sex offender therapy. According to the agent, offenders ordinarily completed the four-level program in twelve to eighteen months, while Meronk was still on level one after three years. At an early-June continuation hearing, Meronk presented testimony from three witnesses, including his therapist.

¶11   The district court conducted a final disposition hearing on June 30, 2014. At that hearing, the district court found that Meronk had possessed the laptop and other computers as alleged, that he had been untruthful with AP&P, and that he had failed to make adequate progress in his sex offender treatment. The court rejected Meronk's argument that his actions resulted from his mental condition, observing that Meronk had been able to maintain employment and that there was no specific evidence that Meronk's condition prevented him from understanding or complying with his probation conditions. The district court found that Meronk had willfully violated the terms of his probation, revoked probation, and imposed Meronk's suspended sentence of two concurrent one-to-fifteen-year terms of imprisonment. Meronk appeals.

ISSUE AND STANDARD OF REVIEW

¶12   Meronk argues that the district court erred in finding that he willfully violated the terms of his probation. The district court's "finding of a probation violation is a factual one and therefore must be given deference on appeal unless the finding is clearly erroneous." *State v. Johnson*, 2012 UT App 118, ¶ 2, 276 P.3d 1254 (citation and internal quotation marks omitted). We review the district court's ultimate decision to revoke probation

"for abuse of discretion." *State v. Brooks*, 2012 UT App 34, ¶ 8, 271 P.3d 831.

ANALYSIS

¶13    Meronk argues that the district court erred in finding that he willfully violated the terms of his probation. We conclude that the district court's findings are not clearly erroneous and that its decision to revoke Meronk's probation was within the bounds of its discretion.

¶14    We begin by observing that testimony before the district court supported its findings that Meronk possessed computers and computer parts, made certain statements to AP&P regarding computers and internet access, and performed as documented in his sex offender therapy. Meronk's arguments on appeal are not that these acts did not occur. Rather, Meronk contends that under the circumstances, the acts cannot be properly characterized as willful violations of his probation.

¶15    Meronk first argues that he did not willfully violate his treatment obligations, because he was performing to the best of his abilities and was on track to complete treatment by the end of his probation period.[3] We cannot say that the district court

---

3. Meronk failed to preserve a number of the other arguments he raises on appeal. *See State v. Diaz-Arevalo*, 2008 UT App 219, ¶ 10, 189 P.3d 85 ("In order to preserve an issue for appeal, a defendant must raise the issue before the district court in such a way that the court is placed on notice of potential error and then has the opportunity to correct or avoid the error."). For example, Meronk argues that the district court violated his constitutional double-jeopardy rights by relying, in part, on Meronk's August 2013 possession of a laptop to revoke his probation. In September 2013, the district court revoked and reinstated

(continued…)

clearly erred when it found that Meronk's treatment progress did not satisfy the requirements of his probation. The district court heard testimony that, after three years, Meronk was still on the first level of a four-level program that most offenders complete within eighteen months. The district court found that Meronk's slow progress reflected "malingering" and that his

---

(…continued)

Meronk's probation. At that time, the district court was aware of the allegation that Meronk had a laptop, but the court did not revoke and reinstate probation on that basis. In June 2014, Meronk argued to the district court that when he signed a new probation agreement after the September 2013 disposition, "[a]nything before that was already dealt with"; that they "started over"; and that "bringing that issue up now when it was talked about, it was dealt with, but not in a formal manner, to bring it up now, is a problem." In that argument, Meronk did not expressly invoke double jeopardy before the district court, much less lay out the nuanced double-jeopardy argument that he now presents. Although a defendant is not required to use "magic words or phrases" to preserve an argument, *In re Baby Girl T.*, 2012 UT 78, ¶ 38, 298 P.3d 1251, Meronk's objection was not sufficient to place the district court on notice of his current argument that relying on the August 2013 laptop violation would implicate his constitutional right to be free from double jeopardy.

Similarly, Meronk did not even suggest to the district court that he lacked notice that his slow progress in sex offender therapy could be deemed a probation violation. That argument is therefore also unpreserved. We also decline to address Meronk's arguments regarding an alleged finding by the district court that Meronk violated his probation by possessing the laptop in December 2013, because the district court's June 30, 2014 revocation of his probation and imposition of his originally suspended sentence contains no such finding.

"comments like, I can't work on that and won't work on that, on my autobiography[4] until I get my computer back, again speak to manipulative conduct that . . . reflects unwillfulness." The court also specifically considered Meronk's mental disabilities but stated, "I don't believe that his limitations are as disabling as counsel has argued them to be."[5] Under these circumstances, we cannot say that the district court's finding that Meronk willfully failed to make the required progress in his treatment was clearly erroneous.

¶16    Meronk next argues that he did not willfully violate his probation by possessing computer parts, because he made bona fide efforts to meet this condition of his probation. *See State v. Peterson*, 869 P.2d 989, 991 (Utah Ct. App. 1994). Meronk correctly asserts that the district court could not revoke his probation for violating this condition unless the violation was willful or presently threatened public safety. *See State v. Hodges*, 798 P.2d 270, 277 (Utah Ct. App. 1990).

¶17    Meronk's argument hinges on whether he actually entertained a good faith belief that he could possess computers and computer parts without violating his probation. The district court found that he did not, stating,

> [Meronk] was specifically told not to have laptops. He continued to have those. He had other component parts. I even went to the extent, I

---

4. Meronk was required to complete a ten-page autobiographical essay as part of his treatment program.

5. The district court clarified that it was making this assessment based on Meronk's employment and the lack of evidence that the demands of his employment were not comparable to the demands of his probation conditions, including those of his treatment.

> underscored, you cannot have game boards. You cannot have laptops. You cannot have towers. You cannot have any parts. And yet Mr. Meronk attempts to draw lines to excuse himself to do what he wants.

The district court rejected, as a factual matter, Meronk's argument that he did not understand that he was forbidden from possessing computers and component parts. The district court observed that Meronk had been able to maintain stable employment. The district court further noted that there was no specific evidence in front of it demonstrating that Meronk's mental condition prevented him from complying with his probation conditions. Meronk has not established that the district court's findings were clearly erroneous.[6] In light of this, the district court did not abuse its discretion by concluding that Meronk willfully violated his probation when, in spite of the district court's commands, he nevertheless possessed the computers and parts.

¶18 Meronk also argues that the district court erred in finding that he was willfully untruthful with AP&P. The district court found that he "made representations to AP&P that clearly were not correct, attempting to justify his access to and control over computer components and computer parts and laptops that he had been told he could not have." Meronk argues that he initially truthfully told AP&P that the district court had ordered him "to get rid of all computer related items" and that it was only after AP&P told him that it could only enforce his formal probation conditions that Meronk told AP&P that "he didn't

---

6. Meronk's own brief acknowledges that he had previously received a "forceful in-court order regarding computer parts," presumably referring to the district court's September 2013 command that Meronk "not have any computer components. Period."

think [the district court] meant for him not to have the computers." On appeal, Meronk claims that his misrepresentation about the district court's clearly expressed intentions "reflected disordered thinking" but was not a willful lie. However, the district court found to the contrary, and despite his disagreement with the court's finding, Meronk has not established that the finding was clearly erroneous.

¶19   Meronk does not expressly argue that the district court's findings did not justify its discretionary decision to revoke probation. *See State v. Brooks*, 2012 UT App 34, ¶ 8, 271 P.3d 831 (stating that we review a district court's ultimate probation-revocation decision for abuse of discretion). However, we briefly respond to an overall theme of Meronk's brief—the suggestion that Meronk's actions reflected his mental disabilities and should therefore not have resulted in revocation. The district court was aware of those difficulties and took them into account in its decision-making. We also note that the district court revoked Meronk's probation and imposed his original sentence only after twice revoking and reinstating probation with jail time. We affirm the district court's decision as falling within its discretion.[7]

CONCLUSION

¶20   Meronk has not established that the district court erred in finding that he willfully violated the terms of his probation. We therefore affirm the district court's revocation of Meronk's probation and its imposition of his suspended sentence.

———————

7. Meronk also argues that we should remand this matter for further consideration if we find any of the district court's findings to be made in error. Because we do not disturb any of the court's findings, we need not address this argument.