**2017 UT App 173**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOHN LEVI HOFFMAN,
Appellant.

Opinion
No. 20150719-CA
Filed September 8, 2017

Fourth District Court, Provo Department
The Honorable David N. Mortensen
No. 111401279

Dustin M. Parmley, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and KATE A. TOOMEY concurred.

POHLMAN, Judge:

¶1  John Levi Hoffman appeals the district court's revocation of his probation and reinstatement of his prison sentence. We affirm.

## BACKGROUND

¶2  In August 2011, Hoffman pleaded guilty to twenty counts of sexual exploitation of a minor, all second degree felonies. The district court sentenced him to one to fifteen years in prison on each count. It then suspended the sentence and placed Hoffman on probation for thirty-six months.

¶3    The conditions of Hoffman's probation required, among other things, that Hoffman "[e]nter into, participate in and successfully complete sex offender therapy as determined by the treating facility, therapists and the Utah Department of Corrections." In July 2014, Adult Probation and Parole (AP&P) filed a Progress/Violation Report with the district court, reporting Hoffman's "[f]ailure to complete probation in the standard allotted time frame." AP&P stated that Hoffman had "made slow but steady progress," that he was on track to "complete his financial obligation within the next few months," that he "reports regularly," and that "field visits to his residence have found nothing of note." However, with his "progress in sex offender treatment coming at a slower pace," AP&P concluded that he would "need additional time to successfully complete that program" and recommended that his probation be extended for an additional thirty-six months. The district court approved the request.

¶4    Nine months later, in April 2015, AP&P filed a second Progress/Violation Report in which it indicated that Hoffman had been "unsuccessfully discharged" from sex offender treatment through the Intermountain Specialized Abuse Treatment Center (ISAT) under the following circumstances:

> In September 2014, while disclosing and preparing for a polygraph examination, Mr. Hoffman admitted that he had been viewing pornography beginning in October 2013 through July 2014, also that he had been at his brother's residence (more than a dozen times) with no consideration for Mr. Hoffman's nieces and nephews being present and that Mr. Hoffman had been to parks, trails and church without approved supervisors. Due to the violations of treatment and probation, Mr. Hoffman . . . was placed on a zero tolerance stipulation with treatment at ISAT. Mr. Hoffman continued with treatment.

On April 8, 2015, information was received from ISAT that Mr. Hoffman continued to be "combative and defensive during treatment," that he admitted he had been attending [Utah Valley University] dances and fondling women's breasts and buttocks, Mr. Hoffman had failed his recent polygraph test, admitted he had continued to look at pornography and had violated the terms of his zero tolerance contract with ISAT. Thus, Mr. Hoffman was unsuccessfully discharged from treatment.

AP&P requested that the district court hold an order to show cause hearing to determine whether Hoffman had violated the terms of probation and recommended, should Hoffman be found in violation, that his probation be terminated as unsuccessful and his prison sentence be reinstated.

¶5 At the request of Hoffman's attorney, the district court ordered that Hoffman undergo a competency evaluation. Although the evaluators observed that Hoffman suffered from cognitive impairments, they opined that he was competent. The district court found Hoffman competent to proceed and scheduled the order to show cause hearing.

¶6 At the hearing, Hoffman requested that the court take judicial notice of the competency evaluations, which indicated that Hoffman had a history of depression and anxiety, that his IQ "fell within the Borderline Range of Intellectual Functioning," and that he had required "special ed/resource classes" in school. (Emphasis omitted.) He was diagnosed with a learning disability and a possible mood disorder. Hoffman's father confirmed that Hoffman was held back in school several times, evaluated as "learning disabled," "had to attend special classes," and struggled to complete school assignments. While the reports recognized Hoffman's mental limitations, they also indicated that Hoffman was "defensive" and "malingering"—"exhibiting

false or exaggerated physical or psychological symptoms relevant to the capacity to stand trial." (Emphasis and internal quotation marks omitted.)

¶7      Hoffman argued that his cognitive difficulties prevented him from successfully completing sex offender treatment and that his violation was therefore not willful. The district court rejected these arguments and found that Hoffman willfully violated his probation by failing to successfully complete his sex offender treatment. The court determined that "[t]he findings and analysis contained in the competency reports do not support a conclusion that Mr. Hoffman could not successfully complete probation," explaining that "Mr. Hoffman's learning disability does not explain [his] resistance to participating in group therapy to the extent that other participants complained" and that "Mr. Hoffman's learning challenges do not significant[ly] mitigate the fact that he relapsed repeatedly in using the internet inappropriately, specifically looking at pornography for a period of months." Despite finding a probation violation, the court declined to immediately assess sanctions and instead gave Hoffman the opportunity to seek an adequate alternative treatment program before the court decided whether to send him to prison.

¶8      At the later sanctions hearing, Hoffman presented letters from four potential treatment providers. All the proposed programs involved outpatient sex offender treatment. Without a viable inpatient treatment option and given that Hoffman had been unsuccessful at addressing his issues in outpatient therapy after several years, the district court determined that "the best way forward is for Mr. Hoffman to be committed to the Utah State Prison." The district court therefore terminated Hoffman's probation and reinstated his original prison sentence, with the sentences to run concurrently with one another. Hoffman appeals.

ISSUES AND STANDARDS OF REVIEW

¶9     Hoffman challenges the district court's willfulness finding and its decision to reinstate his prison sentence. "The district court's finding of a probation violation is a factual one and therefore must be given deference on appeal unless the finding is clearly erroneous." *State v. Meronk*, 2016 UT App 27, ¶ 12, 367 P.3d 1045 (citation and internal quotation marks omitted). "We review the district court's ultimate decision to revoke probation for abuse of discretion." *Id.* (citation and internal quotation marks omitted).

ANALYSIS

## I. The District Court Did Not Err in Finding That Hoffman's Violation Was Willful.

¶10     Hoffman first argues that the district court erred in determining that his failure to complete sex offender treatment was willful. To revoke probation, the district court must find, by a preponderance of the evidence, that the probationer willfully violated the probation agreement. *See State v. Snyder*, 2015 UT App 172, ¶ 7, 355 P.3d 246. "[A] finding of willfulness merely requires a finding that the probationer did not make *bona fide* efforts to meet the conditions of his probation." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶11     Hoffman asserts that his violation was not willful because his mental deficiencies prevented him from successfully completing his sex offender treatment. In support of his argument, Hoffman relies on *State v. Hodges*, 798 P.2d 270 (Utah Ct. App. 1990), in which this court reversed a district court's decision to revoke probation due to inadequate findings regarding whether the probationer's failure to complete sex offender treatment was willful. *See id.* at 279. But *Hodges* does not stand for the proposition that a mental deficiency necessarily precludes a finding of willfulness. Indeed, the evidence in

*Hodges* suggested "several possible causes" for the probationer's slow progress, including "long-standing mental problems, physical problems, medications, manipulative behavior, and inconsistent motivation." *Id.* at 272, 274. While "some of these problems raised questions of [the probationer's] ability rather than willfulness . . . , the manipulativeness and motivation problems were apparently regarded [by psychologists in his treatment program] as subject to his control." *Id.* at 274–75. This court explained that if the probationer's "inadequate progress was caused by non-genuine, token participation in the [therapy] program, he has willfully violated the requirement that he participate in treatment," *id.* at 277, and that had the district court, "based on sufficient evidence, specifically found that [the probationer's] slow progress . . . was due to willfully inadequate participation in his treatment, it would have had discretion to revoke his probation," *id.* at 275. But because the district court failed to make such a finding on the record, and the record revealed evidence that could support a finding that the violations were not within the probationer's control, this court remanded for additional findings. *See id.*

¶12    We are not faced with such a situation here. The district court made the following findings:

> The findings and analysis contained in the competency reports do not support a conclusion that Mr. Hoffman could not successfully complete probation. In fact, the ISAT therapist testified that when Mr. Hoffman exerted himself he could complete assignments. The therapist also indicated that ISAT individualizes treatment and did make accommodation for Mr. Hoffman's learning disability.

> Mr. Hoffman's learning disability does not explain Mr. Hoffman's resistance to participating in group therapy to the extent that other

> participants complained. Mr. Hoffman's learning challenges do not significantly mitigate the fact that he relapsed repeatedly in using the internet inappropriately, specifically looking at pornography for a period of months. Mr. Hoffman offered no excuse or misunderstanding when confronted by ISAT's testimony that Mr. Hoffman watch[ed] films containing nudity to which he masturbated.
>
> In total this Court determines by a preponderance of the evidence that Mr. Hoffman has willfully violated his probation by failing to complete his sex offender treatment.

These findings are supported by the record. An ISAT therapist testified that after his lapse, Hoffman "became treatment resistant," making comments such as "'I can't learn anything else from ISAT'" and "'I shouldn't have to deserve any consequences.'" He also became "defensive" and "closed off to feedback" during group treatment. However, the therapist indicated that he was "able to complete assignments" when he "put forth the effort." Further, the record indicates that although Hoffman had a low IQ and struggled to complete school assignments, he was able to complete college courses with assistance. The competency evaluators had only "mild" and "not significant" concerns about his ability to participate in and comprehend the legal proceedings, and one of the evaluators opined that Hoffman was "malingering"—attempting to exaggerate his symptoms. (Emphasis omitted.)

¶13 This evidence was sufficient for the district court to conclude, by a preponderance of the evidence, that Hoffman failed to make bona fide efforts to successfully complete his sex offender treatment, *see Snyder*, 2015 UT App 172, ¶ 7, and that the failure was within his control, *see Hodges*, 798 P.2d at 275, 277. Thus, the court did not clearly err in finding that Hoffman's

probation violation was willful. *See State v. Meronk*, 2016 UT App 27, ¶ 12, 367 P.3d 1045.

## II. The District Court Did Not Exceed Its Discretion by Revoking Hoffman's Probation.

¶14    Hoffman next argues that the district court exceeded its discretion by revoking his probation and reinstating his prison sentence rather than permitting him to enroll in a new treatment program. Although Hoffman acknowledges that prison was a sanction within the district court's discretion, he argues that once the district court had expressed its preference for treatment over prison and had given Hoffman an opportunity to find alternative providers, it was an abuse of the district court's discretion to reject Hoffman's proposed treatment options.

¶15    "Upon a finding that the defendant violated the conditions of probation, the court may order the probation revoked, modified, continued, or that the entire probation term commence anew." Utah Code Ann. § 77-18-1(12)(e)(ii) (LexisNexis Supp. 2014). "If probation is revoked, the defendant shall be sentenced or the sentence previously imposed shall be executed." *Id.* § 77-18-1(12)(e)(iii).[1] Although courts are encouraged to consider possible alternatives to imprisonment before revoking probation, the ultimate choice of sanction falls within the district court's discretion. *See Black v. Romano*, 471 U.S. 606, 613 (1985). "[D]ue process does not require a reviewing court to second-guess the factfinder's discretionary decision as to

---

1. This provision was amended effective October 1, 2015, after the district court's order was issued. *See* Act of Mar. 31, 2015, ch. 412, §§ 205, 211, 2015 Utah Laws 2254, 2351, 2356 (codified as amended at Utah Code Ann. § 77-18-1 (LexisNexis Supp. 2016)). We therefore rely on the version of this provision in effect at the time Hoffman's probation was revoked and his sentence was reinstated.

the appropriate sanction," and the factfinder need not "elaborate upon the reasons for a course not taken." *Id.* Due process is satisfied where the probationer has "an opportunity to present mitigating evidence and to argue that alternatives to imprisonment are appropriate" and "the factfinder state[s] the reason for its decision and the evidence relied upon." *Id.* at 614.

¶16    Here, Hoffman was given the opportunity to argue for an alternative sanction and was even permitted time to seek alternative treatment programs that could provide appropriate counseling. Although Hoffman found several outpatient options, one of which was more intensive than his previous program, the district court ultimately found that "where years of probation and treatment have not brought Mr. Hoffman to a state where [the] Court has any confidence that he will not recidivate, and where the potential for innocent children to be abused (directly or indirectly [through] viewing child pornography) is so great," anything short of a "semi-secure treatment environment" would be inadequate to allow Hoffman to "address his issues" while also protecting the community. The fact that the district court had previously indicated a preference for treatment over prison and had not explicitly excluded outpatient treatment as an option did not preclude it from finally determining that nothing short of inpatient treatment would provide an adequate alternative to prison. Thus, the district court did not exceed its discretion in revoking Hoffman's probation and reinstating his prison sentence. *See Meronk*, 2016 UT App 27, ¶ 12.

CONCLUSION

¶17    The district court did not clearly err in finding that Hoffman willfully violated his probation. Likewise, it was within the court's discretion to revoke Hoffman's probation and reinstate his prison sentence. Accordingly, we affirm.

————