2025 UT App 53

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TYSON C. ROCCO,
Appellant.

Opinion
No. 20220566-CA
Filed April 24, 2025

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 211904441

Erick Grange and Michael D. Misner,
Attorneys for Appellant

Derek E. Brown and Tera J. Peterson,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1      Tyson C. Rocco acted as the driver in a late-afternoon drive-by shooting of two children. Adult Probation and Parole (AP&P) characterized Rocco's risk to the community as "escalating" based on prior juvenile adjudications of violent crimes and prior involvement with firearms in his vehicle. In this context, despite Rocco's relative youth (he was eighteen when sentenced), AP&P recommended he be sentenced to a term of up to life in prison. The district court, however, did not follow this recommendation and instead suspended the prison sentences, imposed a jail sentence, and placed Rocco on probation. The terms of Rocco's probation included provisions that, among other things, prohibited "gang involvement." AP&P filed a report

within months of sentencing, alleging Rocco had violated the gang provisions. Rocco denied the allegations. A multiday evidentiary hearing was held, after which the district court found Rocco had violated probation. The district court revoked probation and imposed the original prison sentences. Rocco appeals, claiming legal errors, clearly erroneous factual findings, and an abuse of discretion in imposing the original sentences. We reject all of Rocco's claims and affirm the district court.

BACKGROUND

¶2      A thirteen-year-old boy and his fourteen-year-old friend were walking in the late afternoon to a friend's house when a silver Volkswagen Jetta pulled up alongside them. The car's occupants asked the boys where they were from, and without waiting for an answer, they began shooting at the boys. They then sped away. Though both boys survived, one was shot twice and the other once. Multiple witnesses identified the car, and the police determined that it was registered to Rocco's mother, who told police that Rocco had been driving it.

¶3      Not long after, Rocco was charged with three counts of discharge of a firearm with serious bodily injury, each enhanced by a gang penalty. Ultimately, Rocco pled guilty to one count of discharge of a firearm with serious bodily injury (gang enhanced), a first-degree felony, and one count of discharge of a firearm causing bodily injury (gang enhanced), a second-degree felony. The district court accepted Rocco's pleas and ordered AP&P to prepare a presentence report.

¶4      AP&P recommended Rocco be sentenced to prison. It found that Rocco's "involvement in this case [was] extremely concerning" and noted that Rocco was a documented gang member, as "confirmed" by AP&P Metro Gang Unit agents. AP&P detailed Rocco's juvenile history, which included at least six violent adjudications. And recently, after he had become an

adult, officers found a rifle with a live round in the chamber and the safety lock disengaged after Rocco was pulled over for attacking a grocery worker with other gang members. AP&P noted Rocco had "a documented history of being involved with individuals with possession of firearms." AP&P concluded, "[Rocco's] risk to the community appears to be escalating and AP&P believes [him] to be a public safety risk and does not support anything less than a prison recommendation in this case."

¶5 The district court sentenced Rocco to five years to life in prison for the first-degree felony and one to fifteen years in prison for the second-degree felony. However, despite AP&P's recommendation, the court suspended the prison sentences and ordered Rocco to serve 364 days in jail with the possibility of release after 180 days. Rocco was also placed on probation for forty-eight months.

¶6 The court warned Rocco that should he violate his probation, his prison sentences would be reinstated and would run consecutively. As a part of Rocco's probation, the court imposed "the usual and ordinary gang clauses," explaining that Rocco was "not to associate with gang members, have gang colors or gang tattoos," and he was to "[c]omply with all standard gang conditions as directed by" AP&P.

¶7 In September 2021, Rocco was released from jail and transferred to a recovery facility to receive treatment. On September 27, 2021, Rocco signed his probation agreement. He initialed each provision and signed at the bottom, affirming that he had read and understood the agreement. Under Rocco's probation agreement, he specifically agreed, among other things, to abide by the following restrictions:

A. "Not associate with any known [gang] member."

B. "Not wear, display, use or possess any insignias, emblems or clothing associated with a specific gang(s) including, but

not limited to: belt buckles, jewelry, caps/hats, jackets, shoes/shoe laces, scarves/bandanas, shirts inscribed 'In Memory Of' a deceased or incarcerated gang member, or other articles of clothing modified to represent a particular gang(s)."

C. "Not display any gang signs, gestures or any posturing associated with any specific gang(s)."

D. "Not have in my possession any written materials, documents, computer data, photographs which give evidence of gang involvement or activity such as: (1) membership or enemy lists, (2) articles which contain or have upon them gang-associated graffiti, drawings or lettering, (3) photographs or newspaper clippings of gang members, gang crimes or activities including obituaries, (4) photographs of myself in gang clothing, demonstrating hand signs or holding weapons."

¶8 In March 2022, AP&P filed a progress/violation report, alleging that Rocco had violated probation by associating with gang members and possessing evidence of gang involvement. An order to show cause hearing was held over the course of multiple days. An AP&P agent (Agent) testified at each day of the hearing.

¶9 Agent testified that when Rocco was released from jail and started probation, Agent went over Rocco's probation agreement "line by line" with him. Agent said that since 2020, Rocco had been "a documented Benny's World gang member," which was "an independent gang." Agent explained that Rocco started Benny's World after its namesake, Benny Reyes, "was killed." Since then, Benny's World had been involved in "[m]ultiple activities," including "shootings on rival gang members."

¶10 The State offered and the district court received several other pieces of evidence, including the following:

- A Snapchat[1] photo uploaded by Rocco's friend on March 1, 2022, showing Rocco with four other males. Rocco is squatting in the middle of the photo with the rest of the men standing around him. The photo was captioned "All family no freinds [sic] I'm living life a g." All the individuals in the photo were alive at the time of the posting.

- A photo uploaded to Rocco's Facebook account on November 5, 2021, showing Rocco with three other men, two of whom were killed in August 2021 by a member of a rival gang.

- A photo uploaded to Rocco's Facebook account on January 5, 2022, showing two men sitting on a bed. One of the men's faces was obscured by a hand sign he was making.

- A SoundCloud2 account, linked to Rocco's Facebook account, which contained a profile photo of him in a red University of Utah hoodie making a hand gesture; multiple rap songs uploaded after September 27, 2021, including one track titled "Do 'Em Janky" that included lyrics about

---

1. "Snapchat is a social media messaging application, which allows users to create multimedia messages, such as a photograph or a short video, and edit that multimedia to include text captions and other effects. Users are allowed to share that multimedia, called 'snaps,' to a private or semi-public group of users." *In re J.R.H.*, 2020 UT App 155, ¶ 2 n.2, 478 P.3d 56 (cleaned up).

2. "SoundCloud is an online social networking service and audio streaming platform that allows users to share, like, annotate and comment on tracks, and embed a copy of the SoundCloud media player on their own website, blog or Facebook page." *State v. Gibson*, Nos. L–13–1223, L–13–1222, 2015 WL 1962850, ¶ 36 (Ohio Ct. App. May 1, 2015) (cleaned up).

putting people in a cemetery; and a track cover photo that included two males making hand signs overlaid with the letters "BW4L."

¶11 Based on the evidence presented, the district court made findings of fact and concluded the following:

- Rocco understood his probation agreement and was aware of the conditions.

- The Snapchat photo "constituted a knowing violation of Condition A of the Gang Conditions."

- The photos on Rocco's Facebook and SoundCloud accounts "constituted violations of [Condition D] of the Gang Conditions."

- The profile photo and audio file on Rocco's SoundCloud account "evidenced [Rocco's] gang involvement, and were possessed in knowing violation of Condition D of the Gang Conditions."

The district court accordingly ruled, "[Rocco's] probation in this case is terminated unsuccessfully, and the original sentences are imposed."

ISSUES AND STANDARDS OF REVIEW

¶12 Rocco raises two issues on appeal. First, he argues that the district court erred when it ruled that he violated probation because (1) the court misinterpreted the probation agreement and (2) the record did not support a finding of a violation. A district "court's finding of a probation violation is a factual one and therefore must be given deference on appeal unless the finding is clearly erroneous." *State v. Peterson*, 869 P.2d 989, 991 (Utah Ct. App. 1994).

¶13   Second, Rocco argues that the district court abused its discretion and failed to consider all legally relevant factors when it sentenced him, a teenager, to prison. "This court reviews a district court's decision to revoke probation for an abuse of discretion." *State v. Bilek*, 2017 UT App 37, ¶ 2, 392 P.3d 990 (per curiam).

ANALYSIS

I. Alleged Probation Violations

¶14   Rocco's probation agreement read in part, "I fully understand that violation of this agreement and/or *any conditions* thereof, or any new convictions for a crime, may result in action by the Court causing my probation to be revoked or my probation period to commence again." (Emphasis added.) Utah case law makes clear "that a single violation of probation is legally sufficient to support a probation revocation." *State v. Legg*, 2014 UT App 80, ¶ 11, 324 P.3d 656. Thus, under both Utah law and Rocco's own agreement, one violation alone would be sufficient cause for the court to revoke his probation. But, as discussed below, Rocco violated his probation agreement in multiple ways: the Snapchat photo, other online photos, and the SoundCloud profile photo and audio postings.

A.    The Snapchat Photo

¶15   Condition A of Rocco's probation agreement required that Rocco "[n]ot associate with any known [gang] member." The court made findings of fact that on March 2, 2022, Agent, "who was assigned to the Metro Gang Unit, was notified by another detective with the Unit of a photograph uploaded to [Rocco's friend's] Snapchat account." The photo "was of a group of five males," with four of them standing and Rocco "squatting in the front/middle of the group" and all of them "looking at the camera." Agent had testified, "[I]n gang photos usually the

leader, the shot caller, or what we refer to as the man holding the keys in the gang, is prominently in that photo. And Mr. Rocco is in the center of the photo. . . ." The court found that the "other males in the photograph" were either members of the Benny's World gang or documented associates of the gang.

¶16 Based on the available evidence and the court's findings of fact, the photo captured Rocco associating with known gang members. Of course, that's only a violation of Rocco's probation agreement if the captured activity took place after he signed his probation agreement.

¶17 The photo was posted on March 1, 2022, well after Rocco was released and signed his agreement. The photo was captioned, "All family no freinds [sic] I'm living life a g." The court found that in "contrast to the other photographs addressed in the hearings, all of the individuals in the Snapchat photograph were alive at the time of the posting." The court further found that the "caption also suggested that it was taken contemporaneously with the posting." Additionally, the court found that Rocco's "hair in the photograph was . . . consistent with how he wore it around the time the photograph was posted in 2022." In contrast, the court noted that Rocco's hairstyle in the photo differed from the way it appeared "at the time of his arrest for the shooting in this case and at the time he first met with Agent."

¶18 Rocco argues that the court improperly relied on Agent's suggestion that the photo was taken near the time of its posting because Agent "admitted" that his testimony was speculative. But that argument takes Agent's comment out of context. His actual statement was that "it's all speculative of if he's still associating *other than what he's put on social media*." (Emphasis added.) Accordingly, while Agent was admitting he was speculating as to something—in context, that Rocco was generally associating with gang members—Agent was explicit that he was not speculating about what had been found on social media. And that social

media presence is what the district court focused on in determining that the probation agreement had been violated. That the Snapchat photo existed and was posted online is not speculative; it is an established fact supported by the record. Based on that photo and the other evidence, the court made inferences about Rocco's association with gang members, but those inferences weren't dependent on speculative evidence. "The distinction between reasonable inference and speculation is intensely fact-based. . . . A reasonable inference arises when the facts can reasonably be interpreted to support a conclusion that one possibility is more probable than another." *Salt Lake City v. Howe*, 2016 UT App 219, ¶ 11, 387 P.3d 562 (cleaned up).

¶19 On cross-examination, Agent also repeated the word "speculative" after being asked a question with that word in it. On appeal, Rocco attempts to use the casual use of that word to support his entire legal argument. But we are not persuaded that Agent's repeating the word "speculative" on cross-examination undermined the district court's ability to make reasonable inferences regarding the exhibits admitted into evidence.

¶20 Accordingly, the district court did not clearly err in finding that the photo was taken after Rocco was released and that the photo included known gang members. Therefore, the evidence supported the district court's finding that the Snapchat photo "showed [Rocco] associating with at least two documented members of the Benny's World gang subsequent to September 27, 2021 and constituted a knowing violation of Condition A of the Gang Conditions." We therefore hold that the district court's conclusion that Rocco violated his probation agreement was not clearly erroneous.

B. Rocco's Online Photos

¶21 Condition D of Rocco's probation agreement required that he not "have in [his] possession any written materials, documents, computer data, photographs which give evidence of gang

involvement or activity such as: (1) membership or enemy lists, (2) articles which contain or have upon them gang-associated graffiti, drawings or lettering, (3) photographs or newspaper clippings of gang members, gang crimes or activities including obituaries, (4) photographs of [himself] in gang clothing, demonstrating hand signs or holding weapons."

¶22 Rocco posted multiple photos to his Facebook and SoundCloud accounts. The district court made findings of fact that Rocco was the account holder for the Facebook and SoundCloud accounts at issue here and that, as such, he "would have been able to both post and delete photographs and other media to the accounts."

¶23 The court found that one of the images on Rocco's SoundCloud account "showed two males, one making hand signs, and had the letters 'BW4L' at the top." Agent testified, without objection, that BW4L means "Benny's World for life."

¶24 The court found that on November 5, 2021, a photo was "uploaded to [Rocco's] Facebook account" that showed Rocco with Benny Reyes (the namesake of the Benny's World gang) and two other men, Juan and Ivan. Juan and Ivan "were killed in August 2021," allegedly by a rival gang member who was charged with their murders. Agent initially testified, without objection, that Juan and Ivan were "members or associates" of the Benny's World gang.

¶25 The court also found that on January 5, 2022, another photograph was "uploaded to [Rocco's] Facebook account [that] showed Juan . . . and a second male whom Agent . . . believed was Ivan . . . , although the second male's face was obscured by a hand sign he was making."

¶26 Rocco's probation agreement prohibited him from possessing any "photographs or newspaper clippings of gang members, gang crimes or activities including obituaries." Agent

testified that the probation agreement would have prohibited "maintaining obituaries of former dead homies, rest in peace shirts, those kinds of things as well." Agent further stated, "[W]hen I go over their agreement, I go over it more in detail like I just said, so they can understand what that means." Agent explained,

> A large part of gang membership, gang involvement revolves around remembering those that were killed either in drive-by shootings or in furtherance of the gang. And that's whether it's a street gang or an outlaw motorcycle gang that helps inspire younger gang members to know that if they should die, that they'll be remembered. And they get the tattoos. In Mr. Rocco's case, this gang is formed based off of a dead homie and Mr. Rocco has the tattoo remembering that dead homie. And it's a continuing furtherance of how the gang operates for future recruitment and such and to keep people in there.

¶27 Rocco argues that "the district court's finding that the November 5th and January 5th photos of Rocco's friends violated Condition D of the probation agreement was clearly erroneous because it is 'not adequately supported by the record' that Benny, Ivan, or Juan were gang members." (Quoting *State v. Perea*, 2013 UT 68, ¶ 32, 322 P.3d 624 (cleaned up).) Rocco contends that though Agent "initially testified that Ivan and Juan were 'gang members or associates' of the 'Benny's World' gang," on "cross-examination, [Agent] recanted his testimony and stated that he did not know if Ivan and Juan were gang members." When asked whether they were documented gang members, Agent replied, "I believe so. I do not know that off the top of my head." Later, Agent stated that he didn't "know if those two ha[d] been documented other than Mr. Rocco's statements that those were his homies and his best friends." But these statements and Rocco's argument do

not undermine the court's findings or legal conclusions to the extent Rocco suggests.

¶28 While it's true that Condition D of Rocco's agreement specifically lists "photographs or newspaper clippings of gang members" as an example of a prohibited item, the condition also prohibits Rocco from possessing "any written materials, documents, computer data, [or] photographs which give evidence of gang involvement or *activity*." (Emphasis added.) Agent initially testified, without objection, that Juan and Ivan were gang members. He later did retreat somewhat from that testimony by clarifying that he could not recall off the top of his head whether they were documented gang members. But Agent also testified that Juan and Ivan were associated with the gang, that they were killed in a gang violence incident, that a rival gang member was charged with their murders, that Benny was the namesake of the Benny's World gang, and that posting and maintaining photos of those who were killed in gang violence incidents was an important part of gang involvement. Photographic reference to gang activity was explicitly prohibited by Condition D. So, even if Juan and Ivan were not formally documented members of a gang, the evidence was sufficient to establish, at the very least, that Rocco's possession of these photos was evidence of gang involvement or activity. And Rocco does not show that there is not a gang (which he founded) named Benny's World or that—after he was placed on probation and signed the probation agreement—the district court could not find that Rocco posted a photograph of the gang's namesake Benny on Facebook. This posting alone would support a finding of a violation of probation.

¶29 The district court did not clearly err in making these findings of fact and in concluding that Rocco's "action in posting and leaving photographs and audio accessible to the public on Facebook and SoundCloud amounted to him having the items in his possession contrary to Condition D of the Gang Conditions." Likewise, there was no clear error in the conclusion that the

"photographs uploaded [to Rocco's] Facebook page on November 5, 2021, and January 5, 2022, memorialized the deceased namesake of the Benny's World gang, as well as two associates killed by a rival gang member, and constituted violations of Condition D of the Gang Conditions."

C.      The SoundCloud Profile Photo and Audio Postings

¶30     The district court made findings of fact that Rocco's "SoundCloud account included rap songs which had been uploaded after September 27, 2021. One track, titled 'Do 'Em Janky,' was uploaded seven months prior to the June 2022, hearing." The court further found "the track referenced Benny's World, and included lyrics about putting people in the cemetery and putting them in an obituary."

¶31     In speaking about Rocco's audio postings, Agent testified, "AP&P's stance is [that] this is very inflammatory to the other rival gang members. It's just what gang members do. They talk trash to one another. And instead of 30 years ago where it would be settled in a fist fight, it ends up in a shooting."

¶32     The court further found that the "profile photograph on the SoundCloud account was of [Rocco] wearing a red sweatshirt and making a hand gesture." Agent testified that in that SoundCloud "photo he's wearing red; what [officers] describe as his gang colors." In fact, witnesses reported that during the drive-by shooting for which Rocco was initially arrested, he and his co-conspirator were wearing red masks or bandanas.

¶33     Rocco argues the district court erred as a "matter of law" in interpreting the probation agreement to prohibit either "types of music" or University of Utah hoodies.[3] The district court made

---

3. The State contends that this argument is not preserved because Rocco never made it below. Because the merits of this claim can

(continued…)

no such interpretation. Rather, it made specific findings of fact regarding Rocco's violation of his probation agreement.

¶34 The court did not find that the SoundCloud data was a violation of Rocco's probation because the conditions prohibited "types of music" or University of Utah hoodies. Rather, the court found that the SoundCloud track and the associated pictures "evidenced [Rocco's] gang involvement, and were possessed in knowing violation of Condition D of the Gang Conditions." It's not that Rocco cannot listen to rap music under his probation agreement; rather, Rocco cannot "have in [his] possession any written materials, documents, computer data, photographs which give evidence of gang involvement or activity." And that is what the court found Rocco's SoundCloud data reflected—gang involvement.

¶35 There is no clear error in the court's factual findings that Rocco's SoundCloud profile featuring a photograph of him wearing red and making a hand gesture, along with the audio posting that referenced the Benny's World gang and was uploaded seven months prior to the June hearing, evidenced

---

be easily resolved in the State's favor, we choose not to address preservation. *See State v. Bowdrey*, 2024 UT App 113, ¶ 18 n.3, 555 P.3d 367 ("If the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." (cleaned up)), *cert. denied*, 561 P.3d 688 (Utah 2024); *see also State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 ("[B]ecause we can easily dispose of [this claim on its] merits, we choose to exercise our prerogative to simply assume that [it was] preserved and proceed to consideration of the merits.").

Rocco's gang involvement and were possessed in knowing violation of Condition D.[4]

¶36 Rocco needed to violate his probation agreement only once to justify the court's revocation of his probation. Here, as to all the violations identified above, we find no clear error in the court's factual findings that Rocco violated his agreement multiple times. The Snapchat photo and the surrounding evidence demonstrated a violation of Condition A, Rocco's online photos demonstrated a

---

4. Rocco alternatively argues that if his probation agreement prohibited him from wearing red, that agreement was unconstitutionally vague. However, in Rocco's brief, this argument is not identified as a separate issue, nor is there any identification of where it was preserved below. Rocco argues that if we conclude this issue isn't preserved, we ought to review it under plain error. To show plain error, Rocco "must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (cleaned up). For an error to be obvious, the law governing the error must have been clear, or settled at the time the alleged error was made. *Id.* ¶ 21. And to be harmful, the error must have been "of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant" absent the error. *Id.* (cleaned up). Further, our supreme court has clarified that "for an unpreserved federal constitutional claim, the defendant bears the burden to demonstrate that any error was harmful." *State v. Bond*, 2015 UT 88, ¶ 15, 361 P.3d 104. Any error here, if it did exist, was not obvious, and this argument would therefore fail a plain error review. Moreover, as we have explained, Rocco needed to violate his probation agreement only once for the district court to revoke his probation. Given his numerous violations, Rocco cannot show that this alleged error was harmful because even if we take the SoundCloud profile photo out of the equation completely, the result would still be the same.

violation of Condition D, and his SoundCloud profile photo and audio postings also demonstrated a violation of Condition D. Given all this, the court did not err in concluding that Rocco violated his probation agreement.

## II. Imposition of Original Sentences

¶37    Lastly, Rocco contends that "the district court abused its discretion or failed to consider all legally relevant factors when it terminated probation and sentenced a teenager to prison." "This court reviews a district court's decision to revoke probation for an abuse of discretion." *State v. Bilek*, 2017 UT App 37, ¶ 2, 392 P.3d 990 (per curiam). Here, there was no abuse of discretion on the part of the district court because the record supports the underlying finding that Rocco violated his probation agreement.

¶38    Rocco attempts to fuse the requirement to consider all relevant factors at the time of sentencing with how the district court should evaluate the sanction for a probation violation. Rocco references *State v. Killpack*, 2008 UT 49, 191 P.3d 17, to suggest that "courts must consider all legally relevant factors in making a sentencing decision." *Id.* ¶ 59. However, *Killpack* is a case about initial sentencing, *see id.* ¶¶ 16–17; this is a case about revoking probation. The requirement that courts consider all legally relevant factors does not apply to a probation revocation. On the contrary, when it comes to "revoking probation, the ultimate choice of sanction falls within the district court's discretion." *State v. Hoffman*, 2017 UT App 173, ¶ 15, 405 P.3d 855.

¶39    Rocco uses *Killpack* to suggest this decision be reversed because the district court "failed to consider all legally relevant factors" when it sentenced "a teenager to prison based on social media photos and one song on social media." But Rocco's argument confuses the causal chain and suggests that he was sentenced to prison for more "than a quarter of [his] life" just because of some online activity. To be clear, Rocco was sentenced to prison because, with a troubling history of violent offenses, he

pled guilty to serious charges in connection with the drive-by shooting of two children. If Rocco took issue with his initial sentencing, he should have raised that issue when the sentences were handed down. The question before us is not his original sentencing; it is the revocation of his probation and the resultant sanction.

¶40 As discussed above, Rocco needed to violate his probation agreement in only one particular to justify the district court's revocation. And here, the district court's decision was based on far more than just one violation. Rocco's original sentences were justified by the severity of his crime and his continued risk to the community. AP&P recommended a prison sentence when Rocco was originally sentenced, but the court gave him a second chance via his probation agreement. His probation violations highlight his continued association with gang members. The data he posted and maintained online memorialized gang activities. Rocco's actions communicated that he was an ongoing risk to the community. Based on these facts, the district court acted well within its discretion when it revoked Rocco's probation.

CONCLUSION

¶41 We discern no clear error in the district court's factual findings. Accordingly, we affirm the district court's conclusion that Rocco violated his probation agreement. We further conclude that the district court did not abuse its discretion in revoking Rocco's probation and imposing the original sentences.

———————